UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

BETTY WALLACE,

    Plaintiff,

vs.

TARGET CORPORATION, *et al.*,

    Defendants.

Case No. 1:11-cv-771

Judge Timothy S. Black

**ORDER THAT: (1) DEFENDANT TARGET'S MOTION FOR SUMMARY JUDGMENT (Doc. 11) IS GRANTED; AND (2) THIS CASE IS CLOSED**

This civil action is before the Court on Defendant Target Corporation's[1] motion for summary judgment (Doc. 11) and the parties' responsive memoranda (Docs. 21, 22).

## I. BACKGROUND

This is a slip-and-fall premises liability action filed by Plaintiff, Betty Wallace, against Defendant, Target Corporation. Target claims that it is entitled to summary judgment because: (1) it lacked actual knowledge or constructive notice of the spill that allegedly caused Plaintiff's fall; and (2) Plaintiff does not know and cannot establish what caused her fall.

## II. UNDISPUTED FACTS[2]

1. On the day in question, June 25, 2011, Plaintiff went to the Target store at issue on Roosevelt Parkway, in Middletown, Ohio (the "Store") in order to get some medication to help her sleep. (Doc. 12 at 15).

---

[1] The Secretary of the Department of Health and Human Services was also named as a Defendant based on its subrogated interest in the proceeds of the litigation. (Doc. 2). Defendant Secretary filed a counterclaim for medicare reimbursement. (Doc. 3). Today's Order renders Defendant Secretary's counterclaim moot, and it is dismissed.

[2] Plaintiff did not oppose Defendant's proposed undisputed facts. (*See* Doc. 20).

2. Plaintiff slipped and fell in the aisle containing the pain pills. (*Id*. at 16).

3. Plaintiff was the only person in the aisle in which she fell. (*Id*. at 16-17).

4. Plaintiff does not know what she slipped in. (*Id*. at 23).

5. Plaintiff is assuming she slipped in a spill comprised of liquid eye makeup remover. (*Id*. at 48).

6. At no point did Plaintiff see the spill she assumes caused her fall. (*Id*. at 36-38, 44).

7. Plaintiff does not know how long the spill she assumes caused her fall existed before the subject accident. (*Id*. at 46).

8. Plaintiff has no information suggesting that any Target employee or agent caused the spill that Plaintiff assumes caused her to fall. (*Id*. at 46).

9. Plaintiff does not know how the spill that Plaintiff assumes caused her to fall came to be present on the floor of the Store. (*Id*. at 45).

10. Plaintiff has no information demonstrating that any Target employee or agent was aware of the presence of the spill that Plaintiff assumes caused her to fall before the accident occurred. (*Id*. at 23-35).

11. Bryan Schramm, a Target Guest Service Team Leader, was working in the electronics department, near the location of the Plaintiff's fall, on the day of the accident. (Doc. 19 at 7, 13-14).

12. The aisle where Plaintiff fell, aisle A-29, is part of the cosmetics department and is the aisle where facial cleanser is displayed for purchase. (*Id*. at 14, 37).

13. Mr. Schramm became aware of the Plaintiff's fall when he heard "a thud or something falling." (*Id*. at 15).

14. Mr. Schramm was assisting another Target guest at the time he became aware of the Plaintiff's fall and did not make his way to the scene of the accident until after he had finished assisting that guest. (*Id*. at 16).

15. Mr. Schramm is not aware of anyone who actually saw Plaintiff fall. (*Id*. at 21).

16. After Plaintiff's fall, Mr. Schramm observed the spill on the floor of the Store that Plaintiff assumes caused her to fall. (*Id*. at 24).

17. The spill Plaintiff assumes caused her to fall consisted of a clear liquid that is thicker than water. (*Id*.)

18. The liquid comprising the spill that Plaintiff assumes caused her to fall was "very clean and not touched," and looked as though it had been recently spilled. (*Id*.)

19. At the time he observed the spill Plaintiff assumes caused her to fall, Mr. Schramm explained that the liquid was still "strongly held together," and that it had not "settle[d]" like similar spills do when they have "been sitting . . . a while." (*Id*.)

20. Mr. Schramm testified that the spill Plaintiff assumes caused her to fall was roughly rectangular in shape. (*Id*. at 27-28).

21. Mr. Schramm testified that the spill Plaintiff assumes caused her to fall covered an area equal to approximately the size of two of the floor tiles in the Store. (*Id*. at 27-28).

22. The source of the spill Plaintiff assumes caused her to fall appeared to Mr. Schramm to be a 5.5 ounce bottle of Neutrogena oil-free eye makeup remover. (*Id*. at 34).

23. An empty 5.5 ounce bottle of Neutrogena oil-free eye makeup remover was found near the location of Plaintiff's fall. (*Id*.)

24. Mr. Schramm regularly performs periodic inspections of the section of the Store in and near the electronics department, including aisle A-29, and such inspections involve looking for spills on the floor. (*Id*. at 36).

25. Mr. Schramm conducted one of the inspections described in the immediately preceding paragraph ten to fifteen minutes before Plaintiff's fall, at which time there was no spilled liquid present in aisle A-29. (*Id*. at

36-37).

26. Tawny Giles, an Executive Team Leader of Assets Protection at Target, who was acting store manager at the time of Plaintiff's fall, responded to the scene of the accident. (Doc. 16 at 8, 18, 21-24).

27. When she arrived at the scene of the accident, Ms. Giles observed Janice Peters, a Target guest, standing by the Plaintiff. (*Id*. at 25).

28. When Ms. Giles arrived at the scene of the accident, Plaintiff was lying in the main aisle between sections A and B, apparently having fallen into the main aisle from aisle A-29. (*Id*. at 27).

29. Ms. Giles is not aware of any Target employee who had knowledge prior to Plaintiff's fall of the spill Plaintiff assumes caused her to fall. (*Id*. at 62).

30. Susan Skiles, a Senior Team Lead at Target, was on her lunch break during the accident at issue, but she did come to the scene of the accident before the Plaintiff left for the hospital. (Doc. 13 at 14-18).

31. Since other Target team members were already handling the situation by the time she arrived at the scene of the subject accident, Ms. Skiles just stood off to the side and watched. (*Id*. at 19-21).

32. After she arrived at the scene of the subject accident, Ms. Skiles was approached by a guest named Nicki Lewis, who shared information regarding the cause of the spill Plaintiff assumes caused her to fall and directed Skiles' attention to an empty bottle of makeup remover on a shelf in aisle A-29. (*Id*. at 18, 20, 22).

33. Ms. Skiles has no personal knowledge regarding how long the spill Plaintiff assumes caused her to fall existed before Plaintiff's fall. (*Id*. at 26).

34. Daniel Lindner, a Senior Protection Specialist at Target, was the first Target employee to respond to Plaintiff's fall. (Doc. 15 at 8, 18).

35. Mr. Lindner was in the main aisle between sections A and B of the store, around aisle A-25, at the time that he heard a thud behind him. (*Id*. at 18-19).

36. When Mr. Lindner turned around after hearing the thud, he saw the Plaintiff lying on the floor in the main aisle, apparently having fallen there from aisle A-29.  (*Id*. at 19).

37. Mr. Lindner observed one other Target guest in the area near Plaintiff's fall, a woman who stayed with the Plaintiff and tried to help the Plaintiff after her fall.  (*Id*. at 21).

38. Mr. Lindner does not have any personal knowledge regarding how long the spill Plaintiff assumes caused her to fall existed before Plaintiff's fall.  (*Id*. at 33).

39. Gabriel Varner, a Target Assets Protection Team Lead who responded to Plaintiff's fall, does not know how long the spill Plaintiff assumes caused her to fall existed before Plaintiff's fall.  (Doc. 14 at 35).

40. Janice Peters, an independent witness in this matter, had just entered the Store, and was walking down the main aisle, when she saw the Plaintiff come flying out of a side aisle, to land on the floor in front of her.  (Doc. 17 at 8-9).

41. Other than Ms. Peters, there was no one in the immediate vicinity of the Plaintiff at the time of the subject accident.  (*Id*. at 11).

42. After the subject accident, Ms. Peters observed the spill Plaintiff assumes caused her to fall from a distance of less than ten feet, and testified that the spill was approximately eighteen inches in diameter.  (*Id*. at 16).

43. Ms. Peters testified that the spill Plaintiff assumes caused her to fall appeared to have been disturbed by something on the edge closest to the main aisle, but that the spill was not discolored at all and did not have any track marks running through it.  (*Id*. at 17, 35-36).

44. Ms. Peters has no information to suggest that Target was aware of the spill Plaintiff assumes caused her to fall before the subject accident occurred.  (*Id*. at 34).

45. Nicole Lewis, another independent witness in this matter, was shopping in the electronics department at the time of Plaintiff's fall, and first became aware of the fall when she heard a thump and the Plaintiff yelling.  (Doc. 18

at 10, 30).

46. Ms. Lewis actually observed the occurrence of the spill Plaintiff assumes caused her to fall while she was walking down the main aisle separating sections A and B of the Store. (*Id*. at 15).

47. The spill Plaintiff assumes caused her to fall was caused by a little boy, who poured the liquid eye make-up remover onto the floor. (*Id*.)

48. The little boy's mother caught the little boy pouring out the liquid eye make-up remover, grabbed the bottle out of his hands, and placed it back on the shelf. (*Id*.)

49. Ms. Lewis kept walking past the area where the little boy spilled the liquid eye make-up remover and went to the electronics department. (*Id*. at 17).

50. Ms. Lewis did not report the presence of the spill Plaintiff assumes caused her to fall to anyone at Target until after the subject accident occurred, when she told Susan Skiles what she had observed and showed Ms. Skiles the empty bottle on the shelf. (*Id*. at 17, 26, 27).

51. Ms. Lewis testified that she did not report the spill Plaintiff assumes caused her to fall to anyone at Target because she assumed that the mother of the little boy who caused the spill would report it. (*Id*. at 27).

52. Ms. Lewis does not know whether the mother of the little boy who caused the spill Plaintiff assumes caused her to fall reported the spill to anyone at Target, and has no information indicating that Target knew about the spill before Plaintiff's fall. (*Id*.)

53. Although Ms. Lewis initially testified that five to ten minutes passed between the time that the spill Plaintiff assumes caused her to fall occurred and the time of Plaintiff's fall, she later clarified that it could have been even less than five minutes. (*Id*. at 17, 25).

### III.  STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the

movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action. *Celotex*, 477 U.S. at 323. All facts and inferences must be construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (1986).

### IV. ANALYSIS

#### A. Premises Liability

"To prevail in a negligence action, a plaintiff must demonstrate that (1) the defendant owed a duty of care to the plaintiff, (2) the defendant breached that duty, and (3) the defendant's breach proximately caused the plaintiff to be injured." *Long v. Holly Hill Motel, Inc.*, 909 N.E.2d 120, 122-23 (Ohio 2009). The absence of any one of these elements is fatal to Plaintiff's negligence claim. *Hager v. Greisse*, 505 N.E.2d 982 (Ohio App. 1985). "When the alleged negligence occurs in the premises-liability context, the applicable duty is determined by the relationship between the landowner and the plaintiff." *Long*, 909 N.E.2d at 122-23.

"In Ohio, the status of the person who enters upon the land of another (i.e., trespasser, licensee, or invitee) continues to define the scope of the legal duty that the landowner owed the entrant." *Gladon v. Greater Cleveland Reg'l Transit Auth.*, 662 N.E.2d 287, 291 (Ohio 1996). For purposes of this motion for summary judgement only, the Court assumes that Plaintiff was an invitee. "Invitees are persons who rightfully come upon the premises of another by invitation, express or implied, for some purpose which is beneficial to the owner . . . A landowner owes a duty to an invitee to exercise ordinary care for the invitee's safety and protection." *Id.* at 291.

"A shopkeeper owes business invitees a duty of ordinary care in maintaining the premises in a reasonably safe condition so that its customers are not unnecessarily and unreasonably exposed to danger." *Pashchal v. Rite Aid Pharmacy, Inc.*, 480 N.E.2d 474, 475 (Ohio 1985). The same rule applies to the slip and fall context. *Johnson v. Wagner Provision Co.*, 49 N.E.2d 925, 927 (Ohio 1943). "A shopkeeper is not, however, an insurer of the customer's safety." *Id.*

### B. Actual Knowledge and Constructive Notice

In a negligence action based upon a slip and fall in a business, a plaintiff must establish the following with regard to the breach of duty element:

> (1) that he or one of his employees had actual knowledge of the hazard and neglected to give adequate notice of its presence or remove it promptly, or (2) that the danger had existed for a sufficient time reasonably to justify the inference that the failure to warn against it or remove it was attributable to a want of ordinary care.

*Johnson*, 49 N.E.2d at ¶ 3 of syllabus. There is no evidence that Target had actual

knowledge of the spill. Therefore, in order to satisfy the *Johnson* standard, Plaintiff must prove that Target had constructive notice.

Constructive notice requires proof by direct or circumstantial evidence that the store, in the exercise of ordinary care, had or should have had notice of the condition or foreign substance because of the length of time of its presence on the floor. *Presley v. Norwood*, 303 N.E.2d 81, 83 (Ohio 1973). Moreover, proof of constructive notice requires a degree of certainty – mere speculation is not sufficient. *Boles v. Montgomery Ward & Co.*, 92 N.E.2d 9, 13 (Ohio 1950). The length of time necessary to establish constructive notice is not precisely defined; rather, it depends on the specific circumstances of each case. *Catanzano v. Kroger Co.*, No. C-930761, 1995 Ohio App. LEXIS 22, at *2 (Ohio App. Jan. 1, 1995).

Witness Nicole Lewis did not see Plaintiff fall, but heard a thump followed by the sounds of Plaintiff yelling. (Doc. 18 at 10, 30). Ms. Lewis further testified that she observed the spill that caused Plaintiff to fall:

> I saw what had caused – I saw it happen before – I saw a little boy pouring out toner, like facial toner onto the floor and his mom had caught him when he was doing it and she was grabbing the bottle out of his hand as I was passing and it looked like from the corner of my eye she set it back up there.

(*Id.* at 15). Ms. Lewis did not report the spill to any Target employees, and she was not aware of whether or not the mother reported the spill to anyone at Target. (*Id.* at 17, 26, 27). She did testify, however, that five to ten minutes passed between the time that the

-9-

spill occurred and the time of Plaintiff's fall. (*Id.*) Ms. Lewis would later assert that the time frame between the spill and the fall could have been less than five minutes. (*Id.* at 17, 25).

Plaintiff cannot evidence constructive notice because the undisputed facts establish that the 0-10 minute window between the spill and Plaintiff's fall was insufficient time to give rise to an inference of constructive notice. *See, e.g., Powers v. Salvation Army*, No. L-04-1020, 2004 Ohio App. LEXIS 6619 (Ohio App. Dec. 30, 2004) (affirming trial court's entry of summary judgment where the evidence was that the hazard (a cart in front of a store entrance) existed for "five minutes or less" before plaintiff's fall and this evidence could not create a genuine issue of material fact on constructive notice because it was "insufficient time to give adequate notice to the store that any hazard existed."); *Dodson v. Ohio State Univ. Med. Cty.*, 03AP-54, 2003 Ohio App. LEXIS 3909 at ¶ 11 (Ohio App. Aug. 21, 2003) (affirming trial court's holding that "evidence that the hazard [spilled coffee] existed for ten to fifteen minutes and evidence [that] evaporation rings [were present in the spill]" was insufficient to create a jury issue on constructive notice).

Plaintiff argues that these cases are insufficient as a matter of law and cites a number of cases to support her position.[3] However, the cases cited by Plaintiff are distinguishable for a number of reasons. <u>First</u>, in *Schon v. Nat'l Tea Co.*, 274 N.E.2d 578 (Ohio App. 1971), the Court held that 10-15 minutes was sufficient time to put a

---

[3] *See Schon v. Nat'l Tea Co.*, 274 N.E.2d 578 (Ohio App. 1971); *Fox v. Ben Schechter & Co.*, 13 N.E.2d 730 (Ohio App. 1937); *Rist v. Big Bear Stores, Inc.*, No. 89AP-533, 1989 Ohio App. LEXIS 3907 (Ohio App. Oct. 12, 1989).

storeowner on notice of a spill, where there was *also* substantial evidence in support of constructive notice beyond the existence of the hazard, including that the area where the customer fell was dirty or messy, that there were few people in the store (so employees were not busy and should have been more attentive), and that the store had last been swept 1 hour 45 minutes prior. Specifically, in *Schon*, "the floor in the produce section in four or five spots was dirty or messy with such produce as lettuce or celery leaves and grapes on the floor, and that the floor was also wet in spots." *Id.* at 51, 580. In the instant case, however, Ms. Lewis' undisputed testimony establishes that the spill was present for no longer than five to ten minutes, and possibly even less than five minutes. *See Warren v. Friendly Ice Cream Corp.*, No. 2844, 1992 Ohio App. LEXIS 1239 (Ohio App. March 9, 1992) (*citing Hardgrove v. Isaly Dairy Co.*, 41 N.E.2d 862 (Ohio 1942) (held that five to ten minutes is not long enough to put a shopkeeper on constructive notice to presence of hazard). Moreover, ten-to-fifteen minutes before the spill, Mr. Schramm, a Target employee, performed one of his regular periodic inspections of aisle A-29 (where Plaintiff fell), to check for spills and did not see anything on the ground. (Tr. 19 at 36-37).

Furthermore, in *Fox*, as in *Schon*, "[t]he evidence . . . [was] that the plaintiff and her husband entered the store; that [the husband] noticed some debris upon the floor; [and] that some fifteen minutes later his wife slipped upon some substance in the vicinity of the debris." *Fox v. Ben Schechter & Co.*, 13 N.E.2d 730, 732 (Ohio App. 1937). There is no evidence that the liquid on the floor in the instant case was there for more than 10-15

minutes at the most.[4]

Moreover, Plaintiff misrepresents the holding of *Rist v. Big Bear Stores, Inc.*, No. 89AP-533, 1989 Ohio App. LEXIS 3907 (Ohio App. Oct. 12, 1989). *Rist* does not hold, as Plaintiff suggests, that "so long as a plaintiff provides some evidence of how long a foreign substance has been on the floor, summary judgment is inappropriate," rather it held that "[w]hether the existence of a piece of lettuce or 'a little green leaf' in the produce or floral department for one and one-half to two hours gives rise to constructive notice is a question of fact, not one determined in defendant's favor as a matter of law." *Id.* at 3.

This Court does not find as a matter of law that a hazardous substance on a store's floor for ten minutes would never be sufficient to create an issue of fact as to whether the store was put on constructive notice. Rather, this Court finds that given the totality of the circumstances in this case, there is no evidence supporting constructive notice other than the existence of the subject hazard, which is insufficient to show that the failure to warn against it or remove it was attributable to a want to ordinary care by Target.

The facts in the instant case are not in dispute. Plaintiff has simply failed to carry her burden with respect to the breach of duty element. Therefore, this Court need not

---

[4] *See, e.g., Sharp v. Andersons, Inc.*, No. 06AP-81, 2006 Ohio App. LEXIS 3997 (Ohio App. Aug. 8, 2006) which distinguishes *Fox* and *Schon*. "Both *Fox* and *Schon* are readily distinguishable from the case presently before us. First, both cases involved facts, not present here, from which the jury could conclude that the defendant should have been aware of the hazardous condition . . . The *Schon* court noted and relied on the . . . dirty messy condition of the area where the plaintiff fell. In contrast, . . . [in this case] there is no evidence that the surrounding area was dirty or messy . . . In *Fox*, there was evidence that, when the plaintiff and her husband entered the store 15 minutes before her fall, the plaintiff's husband noticed debris in the vicinity where the plaintiff subsequently fell. *Id.* at 13-14.

-13-

address proximate cause.

## V. CONCLUSION

Accordingly, for the reasons stated here, there being no genuine issue as to any material fact, and the movant being entitled to judgment as a matter of law, Defendant's motion for summary judgment (Doc. 11) is **GRANTED.**

The Clerk shall enter judgment accordingly, and this case shall be **CLOSED**.

**IT IS SO ORDERED.**

Date: 12/31/12                                           *s/ Timothy S. Black*
                                                         Timothy S. Black
                                                         United States District Judge